# United States Court of Appeals for the Fifth Circuit

---

No. 24-30218

---

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2024

Lyle W. Cayce
Clerk

Jessie J. Grace, III,

*Petitioner—Appellee*,

*versus*

Tim Hooper, *Warden, Louisiana State Penitentiary*,

*Respondent—Appellant*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:02-CV-3818

---

Before Southwick, Haynes, and Graves, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

The State appeals the district court's grant of federal habeas relief. It argues the district court erred in concluding the state court's decision violated clearly established federal law. We agree. We REVERSE and DENY the prisoner's application for a writ of habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

Jessie Grace was convicted of second-degree murder in 1994. He was sentenced to life in prison without the possibility of probation or parole. The Louisiana Fifth Circuit affirmed his conviction in September 1994. *See State*

No. 24-30218

*v. Grace*, 643 So. 2d 1306, 1307 (La. Ct. App. 5th Cir. 1994). Over the next 18 years, Grace filed several post-conviction relief applications.[1] Each was denied until the district court granted Grace leave to reopen his federal proceedings in August 2012 based on allegedly newly discovered evidence. In the process, Grace obtained a copy of the state grand jury testimony that indicated discrepancies between the grand jury testimony and the trial testimony of two witnesses: the lead investigator, Sergeant Snow, and the victim's girlfriend, Michelle Temple.

Sergeant Snow testified to the grand jury that Darrick Hudson, who was present the night of the crime, robbed and shot the victim in cooperation with Grace. She told the grand jury that she would be seeking a warrant for Hudson's arrest, and he, like Grace, would be charged with first-degree murder. Her trial testimony, however, merely identified Hudson as a witness. Hudson was never arrested for the murder. The trial court prevented Grace's counsel from alerting the jury that Hudson was in custody on unrelated charges while testifying against Grace or asking Hudson whether he had been offered a deal in exchange for his testimony. Sergeant Snow also told the grand jury that Temple saw Grace at the scene but could not identify him as the shooter. At trial, Sergeant Snow testified that she showed Temple a photo lineup that included Hudson, but not Grace, and Temple was unable to identify the shooter from that lineup.

Temple told the grand jury that she saw the shooting and identified the shooter from Sergeant Snow's lineup. She immediately contradicted her claim that she saw the shooting by saying "I seen the gun to his head and I

---

[1] The long procedural history of this case and Grace's many post-conviction relief applications are detailed in the district court's opinion. *Grace v. Cain*, 723 F.Supp.3d 475, 481–83 (E.D. La. 2024). The underlying facts that led to his conviction can be found at *Grace*, 643 So. 2d at 1307.

No. 24-30218

had got out the car and he was already shot, but I had seen the gun to his head." She agreed with the prosecution that she "saw Jessie Grace holding the gun to [the victim's] head." At trial, Temple testified that she did not see or hear the shooting, and she never identified anyone she saw at the shooting. She stated that she saw a man kneeling next to the victim after the shooting. She testified that he had something in his hand, but she did not know what it was. She described the man as dark with a medium build, 5'4 or 5'5, 140–150 pounds, 19 or 20 years old, and wearing blue Dickey pants with a dark blue Raiders jacket. Importantly, the description Temple gave matches a description of Hudson, given by another witness on the day of the shooting.

In February 2015, Grace filed a third application for post-conviction relief in state trial court alleging *Brady* violations grounded in the grand jury testimony. In July 2017, the state trial court granted Grace's application for relief, vacated his conviction, and ordered a new trial. The State appealed. In November 2017, the Louisiana Fifth Circuit reversed the state trial court and reinstated Grace's life sentence, finding the grand jury testimony insufficient to establish a reasonable probability of a different trial outcome under *Brady*. The Louisiana Supreme Court denied Grace's subsequent writ application in 2019.

That same year, Grace filed a second supplemental application in the federal district court asserting a *Brady* claim based on the grand jury testimony. The district court granted relief on Grace's *Brady* claim. This court then vacated the district court's order and remanded for further proceedings because the district court neglected to afford the state court the appropriate level of deference under 28 U.S.C. § 2254(d)(1). *Grace v. Hooper*, No. 21-30753, 2023 WL 2810059, at *3 (5th Cir. Apr. 6, 2023). The court made no determination on the district court's outcome on remand. *Id.*

No. 24-30218

On remand, the district court determined "the state court erred in its consideration of the materiality of the suppressed evidence at issue here in three ways: (1) the court failed to properly consider the effect of the suppressed evidence on the credibility and motivation of trial witnesses, (2) it made unreasonable factual determinations not supported by the evidence, and (3) it failed to properly consider the cumulative materiality of the evidence." The district court granted Grace's second supplemental petition for habeas relief and instructed the State to retry Grace or release him within 120 days. The State timely appealed, and the State's motion to stay the order pending appeal was granted.

## DISCUSSION

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standards to the state court's decision as did the district court." *Reeder v. Vannoy*, 978 F.3d 272, 276 (5th Cir. 2020) (quotation omitted). Federal courts are prohibited from granting relief unless the state court's adjudication, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Woods v. Etherton*, 578 U.S. 113, 116–17 (2016) (quotation omitted).

### I.    *Identifying the Appropriate State Court Opinion*

As a threshold matter, we must determine whether the district court erred by looking through the one-sentence explanation in the Louisiana

Supreme Court's opinion and reviewing the Louisiana Fifth Circuit's reasoning instead.

Section 2254(d) "requires the federal habeas court to train its attention on the particular reasons — both legal and factual — why state courts rejected a state prisoner's federal claims." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (quotation omitted). When the relevant state-court decision "does not come accompanied with those reasons," then "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* The federal habeas court should "presume that the unexplained decision adopted the same reasoning" as the previous decision. *Id.*

Here, the Louisiana Supreme Court ruled on the merits of Grace's post-conviction relief petition in two conclusory lines: "Denied. Relator fails to show that the state withheld material exculpatory evidence in violation of *Brady v. Maryland*." *State v. Grace*, 264 So. 3d 431 (Mem.) (La. 2019) (citation omitted). Although clearly a merits decision, the Louisiana Supreme Court's opinion does not give any reasons for a federal habeas court to evaluate. The last related state-court decision containing an explanation for the holding is the Louisiana Fifth Circuit's decision. *State v. Grace*, No. 17-KH-451, 2017 La. App. LEXIS 2107 (La. Ct. App. 5th Cir. Nov.14, 2017). Nothing in the Louisiana Supreme Court's brief explanation or in the briefing before that court rebuts the presumption that the Louisiana Supreme Court relied on the same reasoning as the Louisiana Fifth Circuit's opinion. In fact, the Louisiana Supreme Court opinion specified that the denial was based on Grace's failure to show the State withheld material exculpatory evidence. Thus, it is proper to look through the Louisiana Supreme Court's opinion and evaluate the reasoning within the Louisiana Fifth Circuit's opinion instead.

No. 24-30218

## II.     Brady *Claim Analysis*

We next consider the state court's adjudication of Grace's *Brady* claims. "The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." *Shoop v. Hill*, 586 U.S. 45, 48 (2019). "A state court decision is deemed contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Court's precedent." *Reeder*, 978 F.3d at 276 (quotation and brackets omitted). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "This means that a state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Hill*, 586 U.S. at 48 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Grace argues the state court's ruling was contrary to or an unreasonable application the Supreme Court's decision in *Brady* and its progeny, particularly regarding the value of impeaching witnesses. According to Grace, the state court violated clearly established law when it discounted the impeachment value of the testimony that Hudson was involved in the crime. Since Hudson was a vital witness against him, Grace argues *Brady* and its progeny required the state court to grant him habeas relief. Thus, Grace contends that the state court's decision "is nothing more than a tossed salad of irrelevant, unreasonable, and illogical assertions that ultimately ignore, defy, or misapply the applicable controlling Supreme

6

Court precedent, including *Brady*, *Kyles*, *Davis*, *Wearry*, *Bagley*, *Smith*, and *Napue*, in ways well beyond the possibility of any fairminded disagreement."

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "To establish a *Brady* violation, a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *United States v. Glenn*, 935 F.3d 313, 319 (5th Cir. 2019) (quotation omitted). "Evidence qualifies as material when there is any reasonable likelihood it could have affected the judgment of the jury." *Wearry v. Cain*, 577 U.S. 385, 392 (2016) (quotation omitted). The materiality of evidence must be evaluated for "the cumulative effect of all such evidence." *Kyles v. Whitley*, 514 U.S. 419, 421 (1995). Further, the threshold for materiality is "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 434. *Brady* applies to evidence of witness credibility. *Giglio v. United States*, 405 U.S. 150, 153–54 (1972).

Grace claims that the grand jury transcript contains *Brady* material that warrants a new trial. The State does not dispute the suppression or favorability of the transcript. The State only disputes the materiality of the transcript, arguing that the testimony within it is immaterial because there is no reasonable probability that the outcome would have been different if the testimony was available to Grace. Grace argued before the state court that the suppression of the grand jury testimony deprived him of the chance to

impeach the witnesses and cast doubt on the identity of the shooter. He argued that he almost certainly would have been acquitted if the jury knew that Hudson, a primary witness against him, was also a suspect in the crime and that Temple had possibly identified Hudson as the shooter.

Grace argues "[t]he materiality of the suppressed evidence, which the State purports to be the only issue before this Court, can hardly be in doubt." The crux of Grace's argument is that he was "convicted wholly on the eyewitness testimonies of Hudson and Moses," and thus, there was "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Grace argues that the state court's ruling violated clearly established federal law by failing to consider the evidence for its cumulative effect and failing to recognize there was a reasonable probability that the disclosure of the evidence would have led to a different outcome at trial.

Grace's most analogous cases are *Smith* and *Wearry*. In *Smith*, a single witness linked the defendant to the crime. *Smith v. Cain*, 565 U.S. 73, 74 (2012). That witness testified that "he had been face to face with [the defendant] during the initial moments of the robbery." *Id.* Yet, the police notes from interviews with the witness after the robbery indicated that he told investigators he could not identify the robber aside from describing him as a black male because he could not see any faces. *Id.* at 75. The Supreme Court found those notes to be material under *Brady*. *Id.* at 76. Similarly, the State in *Wearry* did not disclose records that cast doubt on one of the prosecution's witnesses or medical records that contradicted the witness's testimony. 577 U.S. at 389–390. The prosecution also failed to disclose that another witness sought a deal to reduce his own sentence in exchange for his testimony. *Id.* at 390. The Court held the evidence was material because "[e]ven if the jury — armed with all of this new evidence — *could* have voted to convict Wearry,

we have no confidence that it *would* have done so." *Id.* at 394 (quotation omitted).

The state court here did not unreasonably apply either case. Unlike in *Smith* and *Wearry*, the new evidence does not undermine all the state's witnesses. Although the jury was unaware of the detective's "oversight" in failing to arrest Hudson, the state court explained that the jury "heard testimony by Moses that Hudson acted in concert with [Grace] in the murder-robbery."[2] The state court emphasized the lack of evidence that there was any deal between Hudson and the prosecution that should have been disclosed to the jury. The state court further reasoned that "[e]ven discounting Hudson's testimony at trial about [Grace's] involvement in the crime, the jury heard Moses' testimony that [Grace] shot the victim." The state court also noted that Moses testified that he saw the shooting, and his testimony was consistent with medical evidence of the victim's injuries.[3]

While the state court could have reasonably concluded that the grand jury testimony was material under *Smith* and *Wearry*, it was not unreasonable to conclude the testimony was immaterial because Moses's testimony corroborated Hudson's testimony. Grace's claim that the state court

---

[2] Notably, Moses claimed he had smoked eight or nine marijuana cigarettes on the day of the shooting. The jury heard that testimony, however, and could have chosen to not believe Moses's account of the shooting at the time.

[3] Grace argues that Moses's testimony is not "strong enough to sustain confidence in the verdict," because the police and the victim's family originally suspected that Moses was the killer. The jury heard Moses testify that he was arrested for the murder, and he told police "I ain't killed nobody but I knew who did it." The jury also heard Moses testify that he had been in a fight with the victim's family after the shooting because they suspected he was involved. That evidence is not new, and the jury could have chosen to not believe Moses based on his testimony. Grace also emphasizes conflicting statements given by Moses during his police interview where he first says, "I saw [Grace] kill him," and then says, "I ain't saw it, you can put it like that, he killed him." That evidence is also not new; Grace's counsel had a transcription of Moses's statement to police during trial.

neglected to consider the cumulative effect of the evidence also fails. After considering all the evidence, the state court concluded that "while it inculpates Hudson, it does not, in any way, exculpate defendant as to his participation in the commission of the murder."

Next, Grace argues, and the district court agreed, that the state court misapplied *Davis v. Alaska*, 415 U.S. 308 (1974), by focusing on reasons the jury may not draw certain inferences instead of focusing on the inferences the jury could possibly draw. Grace insists the state court's decision is contrary to *Davis* because the state court believed the suppressed evidence had to be evidence of an actual deal to be material. Although *Davis* is a Confrontation Clause case, Grace argues the case provides clearly established law that the state court violated. An examination of the state court's decision proves that it did not unreasonably apply any potentially relevant principles in *Davis*. The state court considered the effect of the grand jury testimony on the ultimate credibility of the witnesses and found no reasonable probability that the testimony would lead to a different outcome.

Finally, Grace argues the state court's decision is based, in part, on the unreasonable factual findings that there was no evidence of a deal and that no evidence established Hudson as the shooter. To support these assertions, Grace offers the grand jury testimony and the state court's assertion that the evidence inculpates Hudson in the crime. This falls well short of the clear and convincing evidence needed to overcome the presumption that the state court's factual findings are correct. *See* 28 U.S.C. § 2254(e)(1).

While fairminded jurists might disagree on the materiality of the suppressed evidence, that is precisely why federal habeas relief cannot be granted. AEDPA "respects the authority and ability of state courts and their dedication to the protection of constitutional rights." *Hill*, 586 U.S. at 48. It is not enough for the federal court to determine the state court was wrong,

No. 24-30218

the state court's decision must be "so lacking in justification . . . beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The state court's decision is not so deficient as to justify federal habeas relief.

The district court's decision is REVERSED and Grace's application for habeas relief is DENIED.